519 A.2d 555

Commonwealth of Pennsylvania, Petitioner *v.* Everett and Grace Rodebaugh, Respondents.

Argued September 12, 1986, before Judges MAC-PHAIL and PALLADINO, and Senior Judge BLATT, sitting as a panel of three.

*Wayne M. Richardson,* Chief Legal Counsel, with him, *Ann M. Durst,* for petitioner.

*William L. Cremers, Cremers, Morris, Greenwood & Tunnell,* for respondents.

OPINION BY JUDGE MACPHAIL, December 24, 1986:

The Commonwealth of Pennsylvania (Commonwealth) appeals from a decision of the Board of Claims (Board) which found in favor of Grace H. Rodebaugh (Claimant)[1] and awarded her $240,065.69 together with interest. We affirm.

Claimant and her deceased husband were fee simple owners of a 162 acre estate, known as Welkinweir, from May 4, 1935 to May 31, 1977. On May 31, 1977, Claimant and her husband donated Welkinweir to the Commonwealth for use by West Chester State College. Pursuant to the "Statement of Principles" which accompanied the conveyance, the Commonwealth agreed to furnish "full and first-class maintenance" of the residence, contents and grounds according to standards as previously observed, casualty and liability insurance, and security service.[2] The agreement was executed by Claimant, her husband and President Charles G. Mayo of West Chester State College on November 10, 1976. Governor Shapp approved it on December 17, 1976.

During the first three fiscal years the agreement was in existence the Commonwealth abided by its terms. The General Assembly, however, in the General Appropriations Act for 1979-80 specifically denied funds to West Chester State College for maintenance of Welkinweir for the 1979-80 fiscal year. The prohibition has appeared in the General Appropriations Acts for the fiscal years 1980-81, 1981-82 and 1982-83.[3] Since July 24, 1979, the College has not maintained nor used the

---

[1] Mrs. Rodebaugh's husband, Everett, was originally a party to the proceedings, but he died during the pendency of the action before the Board.

[2] Reproduced Record (R.R.) at 8-13, 66.

[3] Although the Board did not find so, presumably the spending prohibition has continued until the present time. In any event, the later years' prohibitions are not at issue here.

property. At the time of the last hearing before the Board, Claimant was still in the process of having the ownership of Welkinweir transferred to a non-profit entity which would use Welkinweir in accordance with the donative intent Claimant and her husband originally displayed in donating the property to the College.

On December 18, 1980, Claimant sued the Commonwealth before the Board for $37,114.85, plus expenses incurred after the Statement of Claim was filed, for the upkeep of Welkinweir. The Board on November 21, 1985 awarded Claimant and her husband $240,065.69, which sum includes all of the expenses Claimant had proven to that point, plus interest at the rate of six percent per annum. The Commonwealth has appealed the Board's award to this Court.

This Court's scope of review of an order of the Board of Claims is limited to determining whether necessary factual findings are supported by substantial evidence and whether an error of law was committed. *Nilsen v. Department of Public Welfare*, 100 Pa. Commonwealth Ct. 568, 514 A.2d 1025 (1986).

## SUBJECT MATTER JURISDICTION

With our scope of review in mind, we turn to the first issue raised by the Commonwealth. The Commonwealth avers that the Board of Claims lacked subject matter jurisdiction to hear this case. The Commonwealth claims that this is so because the Rodebaughs contended, and the Board of Claims held, that the amendments to the appropriations acts violated their constitutional rights under Pa. Const. art. I, §17, which prohibits the legislature from passing any law impairing the obligation of contracts.

The Commonwealth's attack on the Board's jurisdiction seems to be two-fold. The first prong of the attack is that the Board lacks subject matter jurisdiction be-

cause the Commonwealth's disputed obligation turns not on principles of contract but rather turns on principles of statutory or decisional law. In support of this proposition the Commonwealth cites *Delaware River Port Authority v. Thornburgh*, 500 Pa. 629, 459 A.2d 717 (1983). We find this case to be inapposite.

In *Delaware River Port Authority*, our Supreme Court found that the Board of Claims lacked jurisdiction because the case dealt with "a determination of the parties' rights and obligations under the Delaware River Port Authority Compact, a statutory issue under Pennsylvania, New Jersey, and federal law. . . ." *Id*. at 634, 459 A.2d at 720. In the case at bar, the rights and obligations are *not* based on statutory law, they are based on the Statement of Principles signed by the parties. The Statement of Principles is a simple contract, akin perhaps to a sales agreement accompanying a conveyance of land.

We do find the case at bar similar to another case cited by the Commonwealth, *Emergency Medical Services Council of Northwestern Pennsylvania, Inc. v. Department of Health*, 499 Pa. 1, 451 A.2d 206 (1982). There our Supreme Court held that the case was under the Board's jurisdiction even though the Emergency Medical Services Act[4] provided that certain entities were recognized as having the right to receive a contract to provide services to the Commonwealth. The Court concluded that the nature of the rights of the parties flowed from the contract itself.

In the instant case, the gift of Welkinweir from Claimant and her husband was accepted by the Governor pursuant to Section 513 of The Administrative Code

---

[4] Act of November 30, 1976, P.L. 1207, *as amended, formerly,* 35 P.S. §§6901-6911, repealed by the Act of July 3, 1985, P.L. 164, 35 P.S. §§6921-6938.

of 1929,[5] 71 P.S. §193. That section gives the state colleges, along with other state agencies, the right to accept gifts of realty provided the General Assembly approves. However, the *rights* of the parties do not flow from this statute; they flow directly from the Statement of Principles, a contract, executed by Claimant, her husband, and the President of West Chester State College.

As for the second prong of its attack, the Commonwealth avers that the Rodebaughs were alleging violations of their constitutional rights and, hence, their claim sounded in trespass. The Commonwealth then cites two cases for the proposition that the Board cannot hear claims sounding in trespass, but only contract claims sounding in assumpsit: *Department of Revenue, Bureau of State Lotteries v. Irwin*, 82 Pa. Commonwealth Ct. 266, 475 A.2d 902 (1984) and *Fred S. James & Co. v. Board of Arbitration of Claims*, 44 Pa. Commonwealth Ct. 289, 403 A.2d 1051 (1979). The central issue of this case is not the constitutionality or unconstitutionality of the spending prohibition, it is the fact that the Commonwealth entered into a contract that it later breached. The fact that the breach of this contract was brought about by a spending prohibition passed by the General Assembly does not bear on the issue of whether the Commonwealth breached the contract, an issue the Board of Claims was surely competent to decide.[6] It may bear on the issue of where the Common-

---

[5] Act of April 9, 1929, P.L. 177, *as amended*.

[6] The pertinent section of the act creating the Board of Claims states in part:

> The Board of Claims shall have exclusive jurisdiction to hear and determine *all* claims against the Commonwealth arising from contracts hereafter entered into with the Commonwealth, where the amount in controversy amounts to $300.00 or more.

Section 4 of the Act of May 20, 1937, P.L. 728, *as amended*, 72 P.S. §4651-4 (emphasis added).

wealth will find the money to pay the award, but it does not bear on the Claimant's right to receive the award.

It is true that the Board does not have the power to declare that a statute is unconstitutional. The General Assembly did not give the Board the power to do so. However, the test for determining whether a court has subject matter jurisdiction is whether that court is competent to determine controversies of the general class to which a case presented belongs, and the controlling question is whether the court has the power to enter upon the inquiry and not whether it is unable to grant the relief sought. *Vespaziani v. Department of Revenue,* 40 Pa. Commonwealth Ct. 54, 396 A.2d 489 (1979).

In the instant case, the Board certainly is competent to determine controversies of the general class to which the case belongs. Under *Vespaziani,* even if declaring the spending prohibitions unconstitutional were necessary to grant Claimant relief, the Board would nevertheless have subject matter jurisdiction. However, we feel that such a declaration by the Board is not necessary. All the Board was asked to decide, and all it did decide, was whether the Commonwealth owed Claimant a certain sum of money growing out of a breach of contract.

We conclude that the Board possessed subject matter jurisdiction.

### Unconstitutional Impairment of Contract

The Commonwealth's second objection to the order of the Board is that the Board erred in concluding that the Welkinweir expenditure prohibitions were unconstitutional impairments of obligations of contract in violation of Pa. Const. art. I, §17.

The Commonwealth avers, as the first part of this objection, that the contract was never really breached. Its theory is that the spending prohibition passed by

the General Assembly merely eliminated one avenue from which funds could be derived for the upkeep of Welkinweir. The Commonwealth avers that "[t]he President of West Chester had the authority to solicit, maintain and expend gift and grant funds."[7] It may be true that the President had such power, but the fact is that he did not use it and the upkeep of Welkinweir was in fact eliminated. Further, for purposes of this litigation, West Chester State College *is* the Commonwealth. *See Williams v. West Chester State College,* 29 Pa. Commonwealth Ct. 240, 370 A.2d 774 (1977). The Commonwealth may not now relieve itself of liability for breaching a contract by saying that one of its officers could have taken steps to discharge its obligation under the contract but chose not to do so. Further, it is clear from the stipulations entered into by the parties before the Board that the Acting State Commissioner for Higher Education actually directed the President of West Chester to cease maintenance and upkeep of Welkinweir.[8]

It is a basic tenet of contract construction that if the intent of the parties is unclear from the words of a contract, we may look to the circumstances surrounding its execution in order to ascertain the parties' intent. *Department of Transportation v. Mosites Construction Co.,* 90 Pa. Commonwealth Ct. 33, 494 A.2d 41 (1985). This includes the negotiations leading up to the forma-

---

[7] Commonwealth's Brief at 16.

[8] Stipulation 12 states:

July 24, 1979, Dr. Clayton L. Sommers, Acting Commissioner for Higher Education, wrote to President Mayo directing him to terminate further expenditure for the maintenance and upkeep of 'Welkinweir' because of the aforequoted prohibitory language 'pending further action by the Commonwealth to clarify its legal obligations.'
R.R. at 67.

tion of a contract. *Dowgiel v. Reid,* 359 Pa. 448, 59 A.2d 115 (1948).

A look at the correspondence leading up to the gift reveals that Mr. Rodebaugh was concerned about the possible termination of funding by the legislature. In a letter dated August 16, 1976, to Dennis D. Bell, who was the Acting Vice President for Administration and Fiscal Affairs at West Chester, Mr. Rodebaugh asked: "3. The proposal speaks of 'perpetuity'; is not the College dependent, though, on periodic appropriations by the Legislature? Could the Legislature therefore terminate a program for Welkinweir?"[9] Mr. Bell answered in a letter dated September 3, 1976:

> 3. The College is dependent upon periodic appropriations by the Legislature. Technically the Legislature could terminate the program for Welkinweir; however, the 105 year history of the College as an agency of the State should speak well for State commitment. Our experience with the State Legislature is that it does not enter into program specifics and it would be most unusual for the Legislature to interfere with the College management of Welkinweir in the event it does become College property.[10]

It would appear then that Mr. Bell, who must be considered an agent of the Commonwealth, reassured Mr. Rodebaugh that funding would not be eliminated. This is further evidence that the intent of the parties to the contract was that state funding for Welkinweir would continue in perpetuity.

Having decided that the contract was breached, the inquiry could have ended here. However, the Board went on to conclude that the Act whereby the General

---

[9] R.R. at 20.
[10] R.R. at 22.

Assembly prohibited funding was unconstitutional. The Board does not possess the power to declare a statute unconstitutional, but, as we have already noted, we do not feel that this portion of the Board's opinion is essential to the Board's order. The Board stated that the statute was unconstitutional in noting that it did not feel that the Commonwealth could avoid an adverse judgment by arguing that the statute would prevent payment of such a judgment. However, the ability or inability of the Commonwealth to pay the judgment is irrelevant to the issue presented to the Board: whether Claimant is entitled to the judgment. The fact that the Board noted that it did not feel that the spending prohibition would prevent payment because such a prohibition was unconstitutional to begin with does not render its opinion and award infirm, even though it is without the power to declare the statute void.[11]

## SIX-MONTH LIMITATION

Section 6 of the act which established the present-day Board of Claims (Board of Claims Act),[12] 72 P.S. §4651-6, states that "[t]he board shall have no power and exercise no jurisdiction over a claim asserted against the Commonwealth unless the claim shall have been filed within six months after it accrued." The Commonwealth claims that this provision prohibited the Board from adjudicating that portion of Claimant's claim

---

[11] We note that the Commonwealth also objects to the finding of the Board that the spending prohibition by the General Assembly was contrary to Pa. Const. art. III, §11. We agree with the Commonwealth that this provision of the Constitution is not really applicable to the facts of the case. The Board, however, did not directly address this provision of the Constitution and we do not feel that its treatment of this provision affects the validity of its award any more than its treatment of Pa. Const. art. I, §17.

[12] Act of May 20, 1937, P.L. 728, *as amended*.

covering the period from July 16, 1979 to June 16, 1980. We find that the Commonwealth has waived this objection.

Section 6 of the Board of Claims Act is waivable because it relates not to subject matter jurisdiction but only jurisdiction over the person of the Commonwealth. *Department of Public Welfare v. UEC, Inc.*, 483 Pa. 503, 397 A.2d 779 (1979); *Dairy Investments, Inc. v. Department of General Services*, 67 Pa. Commonwealth Ct. 10, 445 A.2d 1340 (1982). The Commonwealth did not raise this objection until the first day of the hearing on December 13, 1983. "A party waives all defenses and objections which he does not present either by preliminary objection, answer or reply. . . ." Pa. R.C.P. No. 1032.[13]

The Commonwealth argues that its objection should not be considered waived because it was based on an opinion of this Court, *Kutztown State College v. Degler-Whiting, Inc.*, 76 Pa. Commonwealth Ct. 180, 463 A.2d 1206 (1983), which was not decided until August 5, 1983, some two years after the last pleadings were filed. In *Degler-Whiting*, this Court held that a contract claim brought to the Board did not fall under what the Board termed its "Fiscal Code" jurisdiction, which would not, presumably, be subject to the limitation found in Section 6 of the Act.

The Commonwealth's argument is to no avail. First, even though *Degler-Whiting* was not decided until two years after the Commonwealth filed its answer, the Commonwealth was nevertheless on notice that the Board had docketed the case as a "Fiscal Code" case. The Commonwealth could have made the same argu-

---

[13] Section 8 of the Board of Claims Act, 72 P.S. §4651-8, provides that "[a]ll matters before the board or hearing panel shall be governed by all of the rules of Pennsylvania Civil Procedure not inconsistent with this act."

ments at the time it responded to the Rodebaugh's Statement of Claim as it makes now. *Degler-Whiting* did not make new law, it merely recognized what was embodied in the statutory scheme.

Even if this were not the case, the Commonwealth could have filed for leave to amend its answer after *Degler-Whiting* was decided and raised the objection in new matter before the hearings commenced. *See* Pa. R.C.P. No. 1033. *Degler-Whiting* was decided four months before the first day of the hearing. This was ample time for the Commonwealth to raise this objection. The Commonwealth did not avail itself of this opportunity and therefore the objection must be deemed to have been waived.

## DENIAL OF COMMONWEALTH'S MOTION TO REOPEN PROCEEDINGS

On March 12, 1985, the Commonwealth filed with the Board a Motion to Reopen Proceedings. The Board denied this motion and also denied a motion to reconsider its denial.

In its motion the Commonwealth averred that it had recently discovered, contrary to the Claimant's allegations, that the Claimant and her husband had not really granted title to the Commonwealth in fee simple, but had retained a life estate in the property. The Commonwealth's allegation grew out of a Supreme Court case, *Appeal of the Board of Directors of the Owen J. Roberts School District,* 500 Pa. 465, 457 A.2d 1264 (1983). It seems that the Owen J. Roberts School District had sued both the Commonwealth and the Rodebaughs alleging that the Commonwealth was liable for school property taxes on Welkinweir and that the Rodebaughs retained a taxable life estate in Welkinweir for which they were separately liable. Our Supreme Court upheld the Commonwealth's immunity from taxa-

tion but remanded the case for the Common Pleas Court to determine whether the Rodebaughs' reserved interest constituted a taxable life estate. On November 26, 1984, Claimant by stipulation agreed to pay the taxes the School District claimed was owed to it.

The Board did not err in denying the Commonwealth's Motion to Reopen Proceedings so that it could argue this issue.

Counsel for the Commonwealth and the Claimant entered into a list of sixteen stipulations at the outset of the proceedings before the Board. The seventh stipulation stated: "The conveyance of 'Welkinweir' was in *fee simple* subject to a perpetual open space easement and subject to terms and conditions respecting the use, preservation and disposition of the property contained in an agreement entitled 'Statement of Principles with Respect to Gift of Welkinweir and its Furnishings.' "[14]

Concessions made in stipulations are judicial admissions, and accordingly may not later in the proceedings be contradicted by the parties who make them. *Tyler v. King,* 344 Pa. Superior Ct. 78, 496 A.2d 16 (1985). Further, a valid stipulation becomes the law of the case. *See Kardibin v. Associated Hardware,* 284 Pa. Superior Ct. 586, 426 A.2d 649 (1981). It does not matter what Claimant agreed to in another proceeding. The Commonwealth offered nothing to the Board to indicate that the stipulation was not validly and freely entered into. The Commonwealth may not now attack the stipulation.

In addition to this point, however, an examination of the stipulation signed by Claimant's counsel in the tax case, which was attached to the Commonwealth's Amended Request for Reconsideration of Order Denying Motion to Reopen Proceedings, reveals that Claim-

---

[14] R.R. at 66 (emphasis added).

ant never stipulated that the conveyance to the Commonwealth was not in fee simple. The first sentence of that stipulation reads:

> Grace H. Rodebaugh will pay to the Owen J. Roberts School District the sum of $42,002.10, representing payment of the school real estate taxes for the tax years 1977-1978 through 1984-1985 for the life estate which the School District *has alleged* was retained by the Rodebaughs since the conveyance of their property (Parcel No. 24-6-3) known as 'Welkinweir', to the Commonwealth of Pennsylvania on May 31, 1977.[15]

The motivation which prompted Claimant to sign this stipulation was more likely a desire to end the matter and save herself from future litigation, rather than an intention to admit that she and her husband had defrauded the Commonwealth.

Even if the stipulation in the tax case can be construed as saying that the conveyance was not in fee simple and that the Rodebaughs retained a life estate, it is clear that the stipulation would be admitting such only for tax purposes. Our Supreme Court made it clear in its opinion in *Owen J. Roberts School District* that its decision that the Rodebaughs *may* have retained a life estate was meant to apply to the tax realm only. In remanding the case the Supreme Court said:

> If this leads to a conclusion that the Commonwealth is not the present owner *for tax purposes*, it will be necessary to reach the question of whether the present interests in Welkinweir which the Rodebaughs and Green Valleys Association have constitute a life estate in the Rodebaughs subject to local assessment or

---

[15] R.R. at 81 (emphasis added).

fall under the public use exemption in Section 2(a), Article VIII of the Pennsylvania Constitution.

*Owen J. Roberts School District*, 500 Pa. at 473-74, 457 A.2d at 1268. The Supreme Court recognized that all it was deciding was the status of ownership *for tax purposes*. The case has no application outside of the tax realm.

Even assuming that the conveyance was not in fee simple, such a state of affairs would still be of no avail to the Commonwealth. At the time the Commonwealth accepted the gift and signed the Statement of Principles, the wording of the deed and the conditions attached to the conveyance were all known to the Commonwealth. It was on notice as to the nature of what it was accepting, regardless of what name might be attached to the estate it actually got. The Rodebaughs abided by all the terms of the agreement. It was the Commonwealth who breached the agreement. The Commonwealth should not be able at this stage to avail itself of the argument that it was really the Rodebaughs who breached first, when this is clearly not the case.

The Commonwealth had no grounds upon which to reopen the proceedings. The board was correct in denying the Commonwealth's motion.

### REIMBURSEMENT FOR INSURANCE PREMIUMS

After they were notified that the Commonwealth would be spending no more money on Welkinweir, Claimant and her husband secured real estate and liability insurance coverage for Welkinweir. The Board made the amount of money the Rodebaughs paid in premiums part of its award to Claimant. The Commonwealth avers that this was improper because the Rodebaughs did not have an insurable interest in Welkinweir in that title was in the Commonwealth.

It is true that a person may not recover on an insurance policy in the event of loss if the person has no insurable interest in the property. *See Central Dauphin School District v. American Casualty Co.*, 493 Pa. 254, 426 A.2d 94 (1981). It is the law in Pennsylvania, however, that a person need not have any property interest in the subject matter insured and that a person does have an insurable interest in property "if he holds such relation to the property that its destruction by the peril insured against involves pecuniary loss to him. . . ." 18 P.L.E. *Insurance* §53 at 505 (1959), *citing Roberts v. Firemen's Insurance Co.*, 165 Pa. 55, 30 A. 450 (1894); *Campbell v. Royal Indemnity Co. of New York*, 256 Pa. Superior Ct. 312, 389 A.2d 1139 (1978). We think that in the case at bar the Rodebaughs, while not holding title to Welkinweir, nevertheless had a pecuniary interest in the property in that they did have the legal right to live there as long as they wanted.[16]

A review of Pennsylvania case law for a decision on point has proven to be unavailing. There are cases from other states which are helpful.

The Texas Supreme Court ruled in a case in which an individual had the use of a house on state-owned land for many years, but had no legal property interest in the house, that the individual had an insurable interest in the house. *Smith v. Eagle Star Insurance Co.*, 370 S.W.2d 448 (Tex. 1963).

The Florida District Court of Appeals said in deciding a case involving an action under a fire policy to recover for the damage to a portion of a building which a corporation used rent free:

---

[16] We do not mean to suggest that the interest that the Rodebaughs retained was a life estate. It is not necessary to decide what interest the Rodebaughs did retain other than to note that they clearly did have the right to inhabit Welkinweir as long as they wished.

A more difficult question is whether Sun State's gratuitous use of one-third of the destroyed building constituted an insurable interest. The definition of insurable interest appears to include the gratuitous use of a building. Certainly, it cannot be said as a matter of law that the rent-free use of a building does not constitute an actual, lawful and substantial economic interest in the preservation of the building. Although no Florida court has addressed the question, the decisions of other courts support this result. See Liverpool and London and Globe Insurance Co. Ltd. v. Bolling, 176 Va. 182, 10 S.E.2d 518 (1940); Stokes v. Republic Underwriters Insurance Co., 387 So.2d 1261 (La. App. 1980).

*Sun State Roofing Co. v. Cotton States Mutual Insurance Co.*, 400 So.2d 842, 844 (Fla. Dist. Ct. App. 1981).

In the instant case, the Rodebaughs had donated their home to the Commonwealth with the understanding that they could live in it as long as they so desired. The loss to the Rodebaughs if Welkinweir was destroyed is evident; they would no longer have a place to live.

Further, nothing on the record would indicate that the Rodebaughs were less than forthcoming with their insurance company about their interest in Welkinweir. An insurer is estopped from questioning the sufficiency of an insurer's interest when the insurer has issued a policy with full knowledge of that interest. *Kelly v. Prudential Insurance Co. of America*, 334 Pa. 143, 6 A.2d 55 (1939).

The Commonwealth argues that it was not obliged under the Statement of Principles to insure Welkinweir for the benefit of the Rodebaughs. Such is not the case. The Statement of Principles clearly provides that the

Rodebaughs may live at Welkinweir.[17] Further, the Statement of Principles provided that the Commonwealth "has agreed to furnish . . . casualty and liability insurance."[18] These two provisions lead to but one conclusion, that the Commonwealth had agreed to insure Welkinweir partly so that the Rodebaughs would be able to reside in a re-built Welkinweir if a catastrophe should strike the original.

A look at the correspondence between the parties bears this out. In a letter from Mr. Bell to Mr. Rodebaugh dated October 7, 1976, Mr. Bell states:

> Since College buildings are self-insured by the State, the house and appurtenances will be insured automatically up to $1 million for fire and casualty upon transfer of title. A policy covering living expenses for you and Mrs. Rodebaugh during such rebuilding cannot be carried by the College, but every effort would be made to accommodate you in other College housing, e.g., the President's house. As to the perpetual fire insurance policies which you now own, we would have them reviewed by insurance specialists as to their transferability.[19]

It is just as apparent that the Rodebaughs were justified in their belief that Welkinweir was no longer covered under the Commonwealth's self-insurance plan after the General Assembly's spending prohibition took effect. Plaintiff's Exhibit 12 was a letter dated November 20, 1980 from Anthony P. Krzywicki, General Counsel for the Department of General Services, to the Claimant's counsel. That letter included the following:

---

[17] R.R. at 9.

[18] R.R. at 8.

[19] R.R. at 24-25.

1. 'Welkinweir' is insured by the Commonwealth as a self insurer in accordance with the Act of May 14, 1915, P.L. 524, (72 P.S. §731). This self insurance fund insures 'Welkinweir' up to $1,000,000 for damages inflicted by fire or other casualties.

2. If 'Welkinweir' were to burn, the insurance proceeds would be available to the Commonwealth in accordance with the aforementioned statute *only* if the Commonwealth decided to rebuild, restore or replace 'Welkinweir'. (Emphasis in original.)

In light of the spending prohibition, what other conclusion could the Rodebaughs come to but that the Commonwealth would decide not to "rebuild, restore or replace 'Welkinweir' . " The Commonwealth must be considered to have breached its promise to provide insurance for Welkinweir and the Rodebaughs were completely justified in procuring insurance because they did have an insurable interest in Welkinweir. As such, the Claimant is entitled to be reimbursed for the monies spent to provide insurance.

## CONCLUSION

We conclude that none of the objections the Commonwealth has raised to the opinion and order of the Board of Claims has merit. The Board's order must be affirmed.

## ORDER

The order of the Board of Claims finding in favor of Grace H. Rodebaugh, and against the Commonwealth in the amount of $240,065.69, together with interest at the rate of six (6%) percent per annum from April 1, 1985 is affirmed.