544 A.2d 95

Jewish Employment and Vocational Service, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued April 21, 1988, before Judges MacPhail and Smith, and Senior Judge Barbieri, sitting as a panel of three.

*Arthur K. Hoffman*, with him, *Michael M. Baylson*, *Duane, Morris & Heckscher*, for petitioner.

*Bruce G. Baron*, Assistant Counsel, for respondent.

Opinion by Judge MacPhail, July 13, 1988:

Jewish Employment and Vocational Service, Inc. (Petitioner) appeals the order of the Board of Claims (Board) relinquishing jurisdiction over a contract dispute between Petitioner and the Department of Public

Welfare (DPW). The Board's order was predicated upon the finding that Petitioner failed to file its claim within six months after it accrued, as required by Section 6 of the Board of Claims Act, Act of May 20, 1937, P.L. 728, *as amended*, 72 P.S. §4651-6.

Petitioner, a non-profit corporation, was approved by DPW to provide partial hospitalization services to eligible recipients in Petitioner's medical assistance program. The Petitioner was then reimbursed by DPW for the medical services provided. The Board found that in order for clinic providers to be compensated for services, they first had to submit claims of the services performed to the County Assistance Offices (CAO). The CAO is then responsible for determining the eligibility of the recipients for whom claims were submitted and verifying the quantity of medical assistance received by the recipient from the clinic provider.[1]

If the CAO deemed the recipient to be eligible and within DPW's limited amount, the approved invoices were forwarded to DPW for payment by the controller.[2] In the instant case, the Petitioner submitted invoices to CAO in the amount of $331,656 for services provided from May 1, 1976 through January 31, 1980. Although none of the claims were rejected by CAO, DPW only reimbursed Petitioner in the amount of $303,266, the sum $28,390 less than the amount billed.

Petitioner then made various contacts with DPW in an effort to be reimbursed for the $28,390. DPW informed Petitioner by letters dated August 27, 1981 and October 2, 1981, that it would not pay the Petitioner's claim for the $28,390, unless the Petitioner provided specification of the unpaid invoices. The Board

---

[1] DPW has a limit on the amount of partial hospitalization services that a recipient may receive in a year. N.T. at 12.

[2] DPW never makes payment on any invoice which lacks certification of approval by the CAO.

that a clinic provider was obligated during the period 1976-1980 to attach a list of invoices, including each patient's name and the amount billed, should that clinic provider desire a detailed explanation of those invoices submitted and paid. The Petitioner did not do this.

Further correspondence continued by letter, between DPW and Petitioner, until May 20, 1982 when DPW suggested in writing that Petitioner file a claim with the Board. On July 22, 1982, Petitioner filed a claim with the Board. The Board found Petitioner's claim to be untimely because it was not filed within six months of August 27, 1981, when the claim accrued. Petitioner's appeal to this Court followed.

The first issue raised by Petitioner is whether the Board erred in concluding that Petitioner's claim was untimely filed.[3] Section 6 of the Board of Claims Act states in pertinent part that "[t]he board shall have no power and exercise no jurisdiction over a claim asserted against the Commonwealth unless the claim shall have been filed within six months after it accrued."

Petitioner contends that as of July 22, 1982 when it filed its claim with the Board, the statute of limitations had not yet expired. Petitioner avers that DPW did not conclusively reject Petitioner's claim, because there was continuing correspondence until May 20, 1982. In *Department of Revenue, Bureau of State Lotteries v. Irwin*, 82 Pa. Commonwealth Ct. 266, 269, 475 A.2d 902, 905 (1984), this Court held that "[a] claim accrues for purposes of suit in the Board of Claims when payment is due and is withheld by the Commonwealth." (Citation omitted.) We find that the letters dated Au-

---

[3] Our scope of review of an order of the Board of Claims is limited to determining whether necessary factual findings are supported by substantial evidence and whether an error of law was committed. *Commonwealth v. Rodebaugh*, 102 Pa. Commonwealth Ct. 592, 519 A.2d 555 (1986).

gust 27, 1981 and October 2, 1981 constitute affirmative denial of payment by DPW.

The body of the August 27, and October 20, 1981 letters read respectively as follows:

> Thank you for your letter of July 29, 1981, concerning payment for services provided at the Work Adjustment Center, before the implementation of the Medical Assistance Management Information System (MAMIS).
>
> As you are aware, we have made every effort to resolve the various billing problems of the Jewish Employment and Vocational Service. Dr. Sue Moyerman of my staff worked with the Office of Medical Assistance to obtain payment on outstanding invoices from the A.P. Orleans Center. Another of my assistants, Marian Bass, worked with the Bureau of Provider Relations in Medical Assistance to help resolve your payment problems under MAMIS. Staff in the Bureau of Provider Relations will continue to work with you to resolve any new problems which might arise under MAMIS.
>
> The Comptroller's Office has carefully reviewed your records, and is unable to find any evidence of unpaid invoices from the Work Adjustment Center. You say in your letter that JEVS has also been unable to identify specific unpaid invoices. *Without these invoices, I cannot authorize payment.*
>
> Of course, if you can at any future time identify any unpaid invoices, we will be happy to review them for payment.

Exhibit C-3, R.R. at 93a (emphasis added). The letter of October 2, 1981 reads as follows:

> This is in response to your letter of September 17, 1981, to Secretary O'Bannon concerning payment for services provided at the Work Ad-

justment Center before the implementation of the Medical Assistance Management Information System (MAMIS).

As Secretary O'Bannon advised Mr. Brownstein in her letter to him of August 27, 1981, our Comptroller's office has been unable to find evidence of unpaid invoices from the Work Adjustment Center. *Since JEVS has also been unable to identify specific unpaid invoices, we are unable to authorize payment.*

Exhibit C-5, R.R. at 90a (emphasis added).

In view of the record, there is sufficient evidence to determine that Petitioner's claim, filed July 22, 1982, was untimely. DPW, through its letters dated August 27, 1981 and October 20, 1981, insisted that, unless Petitioner provided the specific unpaid invoices, it *would not* and *could not* authorize payment. As of August 1981, Petitioner knew that it could not provide DPW with information as to which specific invoices were unpaid, and that, without the specification, DPW would not pay Petitioner's claim. Thus, in light of *Irwin,* the Petitioner's claim accrued in August of 1981, when payment was due and was withheld by DPW.

Petitioner further argues that DPW should be estopped from claiming the statute of limitations as a defense. In order for the doctrine of estoppel to apply, however, Petitioner would have to show that DPW exhibited acts constituting fraud or concealment.

In *Department of Public Welfare v. U.E.C.,* 483 Pa. 503, 397 A.2d 779 (1979), the Court, citing *Nesbitt v. Erie Coach Co.,* 416 Pa. 89, 92-93, 204 A.2d 473, 475 (1964), stated:

[I]f through fraud or concealment the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry, the defendant is estopped from invoking the bar of limitation of action. (citations omitted) The burden of proving

the existence of such fraud or concealment is up-
on the asserting party by evidence that is clear,
precise and convincing. (citations omitted) It is
also well established that mere negotiations to-
ward an amicable settlement afford no basis for
an estoppel, nor do mistakes, misunderstandings
or lack of knowledge in themselves toll the run-
ning of the statute . . . (citations omitted).
*Id.* at 512-513, 397 A.2d 784.

Petitioner contends that it was misled by DPW
when DPW implied that it had exhausted all possible
avenues for locating the specific unpaid invoices, and
further allegedly provided Petitioner with inaccurate in-
formation on how Petitioner could search DPW's ar-
chives for the documentation needed to support its
claim. There is, however, no evidence that DPW's action
caused Petitioner to relax its vigilance or deviate from
its right to file a claim. It was not incumbent on DPW
to make out Petitioner's claim. That burden was Peti-
tioner's. The record shows that Petitioner had full knowl-
edge that DPW would not pay its claim as of August
1981. Petitioner, moreover, admitted that it had been
recommended by DPW (Ms. Marian Bass)[4] that it file a
claim with the Board, yet it neglected to do so. Finally,
it appears that Petitioner had all of the necessary infor-
mation upon which its claim to the Board was based in
its possession at a time when the claim could have been
filed in a timely fashion, but it failed to do so.[5]

---

[4] In Petitioner's letter dated December 7, 1981 to Mr. Radke
(of DPW), Petitioner stated that "Ms. Marian Bass of your office
suggested to me that the best procedure might be to file with the
Board of claims. . . ." Exhibit C-6, R.R. at 94a.

[5] Petitioner's witness testified that all of the invoices were in
its possession to support the claim for $331,656, but Petitioner did
not know which invoices had been paid and which were unpaid,
since DPW's reimbursement checks did not reference specific in-
voices.

We are satisfied that this is not a situation where DPW misled Petitioner or misrepresented to Petitioner that it should not file its claim. Furthermore, there is nothing in DPW's conduct to suggest the "fraud or concealment" necessary to invoke an estoppel, as set forth in *U.E.C.*

We, therefore, conclude that Petitioner's claim was not filed within six months after the claim accrued; that DPW was not estopped from claiming the statute of limitations as a defense; and, consequently, that the Board lacked jurisdiction over Petitioner's untimely claim pursuant to Section 6 of the Board of Claims Act.

ORDER

The order of the Board of Claims in the above-captioned proceeding is affirmed.