REILLY, RJ,
Anne Marie Shaffer was killed in a one-vehicle accident in which she was a passenger on September 6, 1987. At the time of the accident, Anne Marie was a minor, age 12, residing in the same household as her parents, Richard and Yvonne Shaffer.
Subsequent to the accident, the carrier for the operator of the motor vehicle in which decedent was killed tendered the limits of its liability coverage in the amount of $50,000. At the time of the accident, decedent’s parents, Richard and Yvonne Shaffer, carried insurance with Aetna Casualty and Surety Company under policy no. 322 SY 18768871PCA. This policy provided personal automobile coverage *524 for three different vehicles. The limits of liability contained in the policy were $100,000 per person and $300,000 per accident. The policy also provided uninsured/underinsured motorist benefits in the amount of $100,000 per person and $300,000 per accident.
Richard Shaffer along with Francis A. Romeo were also insureds with Aetna under a policy issued upon a recreational vehicle. (Policy no. 233 RA 211831 PCA V.) This policy provided a single liability limit of $300,000 and underinsured limit of $35,000.
Upon receipt of the tender of the liability limits from the tort-feasor’s liability carrier, the Shaffers immediately placed Aetna on notice of claim for underinsured benefits pursuant to the aforesaid policies. However, the parties were unable to reach an agreement as to how much of said underinsurance coverage should be paid to the estate of Anne Marie Shaffer. Accordingly, the Shaffers made a demand for arbitration as required by the provisions of the policies. Both policies contained arbitration provisions requiring the parties to proceed in accordance with the Pennsylvania Uniform Arbitration Act, 42 Pa.C.S. §7301 et seq. These policies further provided that the issues to be submitted to arbitration be limited to (1) entitlement and (2) damages.
An arbitration board was selected and hearing was held before that board on February 5 and 6, 1990. Prior to the hearing, counsel for the respective parties agreed that the board was to assess damages without reference to the actual amount of underin-surance coverage available to the estate of Anne Marie Shaffer. The arbitration panel then requested counsel to stipulate the limit of defendant’s underin-surance coverage. A stipulation that defendant’s underinsurance exposure totaled $335,000 was pre *525 pared by counsel for Aetna and given to the chairman of the panel, Timothy Creany, Esq. At the conclusion of the trial, the arbitrators entered an award dated February 8, 1990, in favor of the estate of Anne Marie Shaffer in the total amount of $401,147.28.
Aetna filed a petition to vacate/modify to which plaintiffs timely filed an answer and new matter. Aetna seeks in its application to vacate/modify to have the court determine post-hearing the issue of coverage. Aetna now maintains that at the time of arbitration its underinsurance coverage totalled only $135,000 rather than the sum of $335,000.
Upon review, this court would note that Aetna is not attacking the amount of the award as entered by the arbitrators. Indeed, Aetna admits that the arbitrators were requested to enter an award based upon their evaluation of the damages. The award entered for the Shaffer estate in the amount of $401,127.28 is not questioned by Aetna. The thrust of Aetna’s petition to vacate/modify is to have this court determine the extent of Aetna’s liability to pay the award. Aetna has in effect raised the question of coverage for the first time in these proceedings.
While the procedure adopted by Aetna to test the issue of coverage may not be appropriate, it does present the first opportunity for either party to address the question. The Shaffer estate in its answer and new matter has placed before the court in a timely manner its position as to the extent of Aetna’s liability to satisfy all or part of the arbitration award. The parties have, in essence, brought an action for declaratory judgment before the court.
Therefore, this court will consider all issues raised by both parties and direct Aetna to pay the amount that is consistent with the law and the evidence.
*526 This court would acknowledge that it is permitted to modify or correct an award which is contrary to law pursuant to 42 Pa.C.S. §7302(d)(2), which states:
“Where this paragraph is applicable, a court in reviewing an arbitration award pursuant to this subchapter shall, notwithstanding any other provision of this subchapter, modify or correct the award where the award is contrary to law and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict.” 42 Pa.C.S. §7302(d)(2).
The issue raised by Aetna Casualty and Surety Company is whether the Shaffers are permitted to stack their underinsured motorist coverage under the Pennsylvania Motor Vehicle Financial Responsibility Law.
This court is of the opinion that plaintiffs are entitled to stack underinsured motorist benefits to the amount of $335,000.
At the time of the accident plaintiffs, Richard and Yvonne Shaffer, were insured by defendant under two policies. The first (policy no. 233 SY 18768871 PCA) provided personal liability coverage for three vehicles in the amount of $100,000 per person/$300,000 per accident and underinsurance coverage for the same amount. Furthermore, Richard Shaffer was also a coinsured under a recreational vehicle policy (policy no. 33 RA 211831 PCA V) which provided liability coverage in the amount of $300,000 and underinsured motorist coverage in the amount of $35,000.
Under the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §1701 et seq., plaintiffs assert that they are entitled to stack underin-sured motorist coverage on the three vehicles under the first Aetna personal auto policy, thereby provid *527 ing coverage in the amount of $300,000. Added to the underinsurance coverage on the second Aetna policy, plaintiffs would be covered up to the amount of $335,000.
MVFRL section 1731, relating to underinsured motorist coverage, provides as follows:
“Underinsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles.” 75 Pa.C.S. §1731(c).
Defendant points to MVFRL section 1736 for the proposition that plaintiffs may not stack underinsurance coverage beyond their liability coverage under the same policy. Therefore, defendant asserts plaintiffs’ underinsurance limit is $135,000 under the two policies.
MVFRL section 1736 provides as follows:
“The coverages provided under this subchapter may be offered by insurers in amounts higher than those required by this chapter, but may not be greater than the limits of liability specified in the bodily injury liability provisions of the insured’s policy.” 75 Pa.C.S. §1736.
This court is of the opinion that Pennsylvania case law does not support defendant’s interpretation of this section. In Tallman v. Aetna Casualty and Surety Company, 372 Pa. Super. 593, 539 A.2d 1354 (1988), the court declared void as contrary to the public policy behind the new MVFRL a provision in an automobile insurance policy prohibiting stacking of underinsurance coverage for multiple vehicles under the same policy. Tollman concluded that the legislature clearly intended that stacking of underin-surance coverages be permitted. Id. Stacking of uninsured benefits was permitted prior to passage of *528 the MVFRL, and now underinsured benefits are included with uninsured benefits under Subchapter C. (MVFRL section 1731 et seq.) without limitation on stacking. Tallman, supra.
The only limitation on underinsurance coverage, this court would note, is found in MVFRL section 1731(d) which states that a person who recovers damages for uninsured motorist coverage cannot also recover damages for underinsured motorist coverage. 75 Pa.C.S. §1731(d). “Since the legislature chose not to include a [stacking limitation] provision when enacting Subchapter C., their non-inclusion of such a provision must be construed as intentional where there is no other meaning fairly implied from the legislative intent.” Tallman, supra.
Plaintiffs concede that to allow motorists to purchase underinsurance coverage in amounts in excess of what they are willing to purchase for their own liability, thus essentially establishing a first-party insurance system, would inhibit the policies behind the MVFRL. However, plaintiffs purchased the maximum amount of liability coverage possible, such that stacking in the case at bar does not cause underinsurance coverage to exceed liability coverage. Thus, stacking effectuates the policy behind underinsurance within the MVFRL — to fully compensate the victims of irresponsible drivers. See Tallman v. Aetna Casualty and Surety Company, 372 Pa. Super, at 595, 539 A.2d at 1356.
Thus, defendant’s reliance on Chartan v. Chubb Corp., 725 F.Supp. 849 (E.D. Pa. 1989) is not persuasive. Chartan involved the question of stacking under a policy that expressly limited coverage to $100,000 for two vehicles. While acknowledging that stacking is permitted under the MVFRL, the District Court held the plaintiff could not stack coverage for two vehicles under MVFRL section 1736 to *529 total $200,000 due to the unambiguous language of the policy limiting coverage to $100,000. Chartan at 851, 852.
Initially, this court would note that the case at bar is clearly distinguishable from Chartan. The policy involved herein is split into liability coverage and uninsured/underinsured motorist coverage, unlike in Chartan which involved a single-limit policy. There the court could rationally conclude that the policy was intended to prevent stacking beyond the liability limit of $100,000. No such conclusion can be reached in the case at bar where the policy expressly provided for $100,000/$300,000 coverage for both liability and underinsurance.
Even if this court were to adopt the rationale of the Eastern District in Chartan instead of that of the Pennsylvania Superior Court in Tollman, plaintiffs in the case at bar are permitted to stack underinsurance coverage for the three vehicles. Plaintiffs purchased the maximum amount of liability coverage, i.e. $100,000 per person/$300,000 per accident, and as such, are entitled to stack underinsurance coverage on the personal auto policy in the amount of $300,000. By purchasing $300,000 in liability coverage upon the general public, the Shaffers have avoided the prohibition enunciated in Chartan. Stacking the underinsurance coverage on three vehicles does not cause the underinsurance coverage to exceed the liability coverage purchased on the general public by the Shaffers.
However, this court need not adopt the rationale of the Eastern District in Chartan in that North River Insurance Co. v. Talor, Middle District, no. 1: CV 90-0290, July 13, 1990, refuted the Chartan holding. The court in North River stated that the intent behind 75 Pa.C.S. §1736 is simply that uninsured/underinsured motorist coverage in any one *530 policy cannot exceed the liability coverage in that policy. Judge Rambo pointed out in North River that this legislative intent is evidenced by the lack of a stacking prohibition with regard to underinsurance while such a prohibition was specifically provided in section 1738 with regard to stacking of first-party benefits. Section 1738, entitled “stacking of uninsured and underinsured benefits with option to waive,” further indicates this legislative intent by specifically approving stacking and providing for lower premiums for drivers who waive in writing their right to stack uninsured/underinsured benefits. See North River.
Therefore, defendant’s position that plaintiffs are not entitled to stack underinsured motorist benefits to the amount of $335,000 is both unpersuasive and unsupported by Pennsylvania law. Case law cited by defendant can be distinguished on its facts. The case at bar involves a split-coverage policy whereas the main case relied upon by defendant provided single-limit coverage.
Plaintiffs also assert that the parties entered into a stipulation concerning the amount of the underinsurance coverage of defendant.
Upon submitting to arbitration, pursuant to the provisions of the policies, defendant acknowledged the amount of its underinsurance coverage ($335,000 or $300,000 on the first automobile policy and $35,000 on the recreational vehicle policy) and prepared a written stipulation to this effect. Defendant now seeks to have this issue reconsidered. However, this court would note that a valid stipulation freely entered into becomes the law of the case. Commonwealth v. Rodebaugh, 102 Pa. Commw. 592, 519 A.2d 555 (1986). Furthermore, any concessions made in stipulations constitute judicial admis *531 sions that may not later be contradicted or reopened in subsequent proceedings. Id. at 604, 519 A.2d at 563.
Defendant asserts that the figure it submitted to the arbitration board was not a stipulation, but was merely a statement of potential coverage. However, Timothy Creany, chairman of the arbitration board, testified at a May 2, 1990, hearing that the board requested a stipulation as to amount of coverage to assist in its deliberation. (Transcript at 10.) Said stipulation was prepared by John McIntyre, attorney for defendant. Mr. Creany testified that Mr. McIntyre did not want to advise the board as to amounts of coverage unless it would become determinative. (Transcript at 10.)
Thus, it is difficult for this court to understand why Mr. McIntyre would enter into a stipulation, which he was not required to agree to, if the stipulation was only potential coverage having no binding effect on the case. A stipulation as to actual coverage was requested by the arbitration board and a stipulation was provided by Mr. McIntyre. As such, Mr. McIntyre is not precluded from asserting that the figure he provided to the board was only potential coverage.
This court would note that while an attorney has no authority to waive a client’s substantive rights, attorneys have “implied authority to make agreements and stipulations with respect to purely procedural matters during the regular course of litigation.” Philadelphia v. Schofield, 375 Pa. 554, 559, 101 A.2d 625, 627 (1954). It is clear that Mr. McIntyre had full authority to act on behalf of his client, Aetna, and as such, defendant is bound by the stipulation as the law of the case that underin-surance coverage totals $335,000.
*532 Also, defendant claims the stipulation should not now be binding because the issue of amount of underinsurance coverage was not within the jurisdiction of the arbitrators since arbitration was limited to the issues of entitlement and damage. This court is of the opinion that this assertion goes against settled case law and practice in Pennsylvania. Valid stipulations become the controlling law of the case without affecting the jurisdiction or prerogatives of the court. Foley Bros. v. Commonwealth, Department of Highways, 400 Pa. 554, 163 A.2d 80 (1960).
Even if the amount of underinsurance coverage was not immediately within the jurisdiction of the arbitration board, by entering into a stipulation the defense brought that issue within the arbitrators’ final determination. The stipulation, therefore, remains the binding law of the case. Commonwealth v. Rodebaugh, 102 Pa. Commw. 592, 519 A.2d 555 (1986).
As to whether Mr. Shaffer was fully apprised of his rights with regard to the recreational vehicle policy under the MVFRL and his election of unde-rinsurance coverage in an amount less than liability coverage, the issue is moot due to this court holding that the stipulation is binding.
Wherefore, the court enters the following
ORDER
Now, October 2, 1990, it is the order of this court that defendant’s petition to modify/vacate be and is hereby denied.
It is the further order of this court that the estate of Anne Marie Shaffer be awarded the stipulated amount of $335,000.